J-A07034-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: Y.K.L., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: M.S.L., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1279 MDA 2020 |

Appeal from the Decree Entered September 2, 2020
In the Court of Common Pleas of Berks County Orphans' Court at No(s):
87238

| | | |
|---|---|---|
| IN RE: Z.H.L., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF M.S.L., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1280 MDA 2020 |

Appeal from the Decree Entered September 2, 2020
In the Court of Common Pleas of Berks County Orphans' Court at No(s):
87239

BEFORE:   BOWES, J., DUBOW, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                **FILED MAY 05, 2021**

Appellant, M.S.L. ("Father"), files this appeal from decrees dated and entered September 2, 2020, in the Berks County Court of Common Pleas, granting the petition of Berks County Children and Youth Services ("BCCYS" or the "Agency") to involuntarily terminate Father's parental rights to his

---

[*] Former Justice specially assigned to the Superior Court.

J-A07034-21

minor, dependent daughters, Y.K.L., born in August 2016, and Z.H.L., born in January 2019 (collectively, the "Children"), pursuant to the Adoption Act, 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b).[1]  After a careful review, we affirm.

The orphans' court has aptly summarized the procedural and factual history as follows:

A. PROCEDURAL HISTORY

On May 15, 2020, BCCYS filed separate Petitions for Involuntarily Termination of Parental Rights relative to Mother [and] Father. . .(collectively, the "Petitions").[2]  On August 24 and 28, 2020, the [orphans'] [c]ourt presided over a two[-]day termination hearing (the "Hearing").[3]  Father attended the Hearing with the assistance of counsel, Joseph T. Bambrick, Jr. ("Counsel");[4] Mother did not attend.  Counsel advised the [orphans'] [c]ourt that he had no contact with Mother immediately leading up to the Termination Hearing.  As such, on the first day

_____

[1] Pursuant to separate decrees of the same date, the orphans' court terminated the parental rights of Mother, N.D.R. ("Mother").  Mother did not participate in the instant appeals and did not file separate appeals.

[2] The record suggests that BCCYS additionally filed goal change petitions; however, such petitions and any resulting orders are not at issue in the instant appeals.  **See** Notes of Testimony ("N.T."), 8/24/20, at 5.

[3] The Agency presented the testimony of Carla Sanders, Adoption Supervisor, BCCYS; Alison Hill, licensed psychologist and professional counselor, who was qualified as an expert in the area of psychology and trauma evaluations of children; Josephine Heil, caseworker, BCCYS; and Father.

[4] Father had previously been represented by court-appointed counsel throughout the dependency proceedings until January 31, 2020.

- 2 -

of the Hearing, Counsel made an oral motion to withdraw as counsel for Mother, only, which the [orphans'] [c]ourt denied.[5]

On September 2, 2020, after careful consideration, the [orphans'] [c]ourt entered separate orders terminating the parental rights of Mother [and] Father, . . . finding that BCCYS had established its burden under Section 2511 of the Act by clear and convincing evidence.

. . .

B. FACTUAL HISTORY FROM DEPENDENCY PROCEEDINGS

On May 11, 2019, members of the Muhlenberg Township Police Department responded to complaints of a domestic disturbance at the Rodeway Inn in Muhlenberg Township, Berks County, Pennsylvania, involving Mother and Father. Father allegedly admitted to being under the influence of cocaine during this encounter with the police. Mother, too, appeared to be under the influence of controlled substances. Further, as set forth in greater detail below, the hotel room was dirty, and the [C]hildren were without proper nourishment, care, or control.[6]

A representative from BCCYS, Josephine Heil ("Ms. Heil"), received a call from police dispatch indicating that Mother and Father would be arrested/taken into custody. When Ms. Heil arrived at the Rodeway Inn, Mother was on the ground yelling obscenities. Ms. Heil needed to walk away from Mother because of her hostility toward Ms. Heil and police[.] Further, Mother had a number of outstanding warrants for her arrest issued in New York. Father was combative and he appeared to be under the influence; he smelled of alcohol, his eyes were red and dilated and he was very hard to understand. Father identified the Children's [m]other as an individual named "Samantha Lee" - not the Children's [m]other. Mother also denied being the mother of Children.

When Ms. Heil entered Mother and Father's hotel room, it was messy. Ms. Heil observed rolled up dollar bills next to an unidentified white substance, a liquor bottle near the bathroom, clothes all over the place, no food, and no bed for the Children. Ms. Heil spoke to staff at the Rodeway Inn and wanted to know

---

[5] At the August 24 and 28, 2020, termination hearing, the Children were represented by a guardian *ad litem*/legal counsel.

[6] Mother had a prior history with BCCYS. ***See*** BCCYS Exhibits 1 and 2 at 6.

when Mother and Father checked in. The staff member responded that Mother and Father had been staying there for approximately three months, since February. Ms. Heil discovered both [c]hildren in diapers; [Y.K.L.] (approximately three-years-old at the time) wanted a bottle, rather than solid food (a donut offered by staff of the Rodeway Inn).

On May 11, 2019, the Hon. Mary Ann Ullman of the [] the Berks County Court of Common Pleas entered separate orders permitting BCCYS to take emergency protective custody of the Children. On May 22, 2019, following a hearing on dependency petitions filed by BCCYS, the Hon. Jeffery K. Sprecher entered adjudicatory and dispositional orders finding the Children dependent and ordering Father to comply with certain services, treatment, and substance testing.[7] The [juvenile] [c]ourt expanded that list of obligations through subsequent Orders entered in connection with the dependency proceedings as a result of Father's continued failure to make suitable progress. Among other things, the [juvenile] [c]ourt ordered Father to:

(a) Cooperate with parenting education;

(b) Undergo a mental health evaluation and comply with any treatment recommendations;

(c) Undergo a drug and alcohol evaluation and comply with any treatment recommendations;

(d) Undergo random urinalysis;

(e) Participate in casework sessions through BCCYS and comply with any recommendations;

(f) Establish and maintain suitable and appropriate housing and income;

(g) Notify BCCYS of changes in income or residence;

(h) Sign releases of information as requested; and

(i) Have supervised visitations with the children as scheduled and act appropriately at those visitations.

Orphans' Court Opinion ("O.C.O"), 12/1/20, at 1-4 (citation to record omitted)

(footnotes omitted) (footnotes added).

---

[7] Critically, neither Mother nor Father appealed the orders of adjudication and disposition as to the Children.

Subsequent to the hearing, the orphans' court issued decrees dated and entered September 2, 2020, terminating parental rights. Thereafter, on September 30, 2020, Father, through counsel, filed timely notices of appeal, as well as concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b), which this Court consolidated *sua sponte* on October 22, 2020.

On appeal, Father raises the following issues for our review:

1. Did the [orphans'] court have initial jurisdiction in this matter because the parties were in transit and [BCCYS] only became involved as a result of an argument between the mother and a local police officer?

2. Did the [orphans'] court commit error when it terminated the parental rights of the parents of the children?

3. Were the parents [adequately] represented by counsel during the hearing before the [orphans'] court?

4. Did the [orphans'] court commit error when it permitted testimony by [BCCYS] and admitted testimony regarding unlawful search and seizure?[8]

Father's Brief at 4 (suggested answers omitted) (unnecessary capitalization omitted) (footnote added).

_____

[8] We observe that this issue is not included in Father's Rule 1925(b) Statement and, as such, it has been waived. **See Krebs v. United Refining Co.**, 893 A.2d 776, 797 (Pa.Super. 2006) (stating that a failure to preserve issues by raising them both in the concise statement of errors complained of on appeal and statement of questions involved portion of the brief on appeal results in a waiver of those issues).

In his first issue, Father challenges the court's jurisdiction to take the Children into custody. Father's Brief at 7. Father argues that he and the Children were residents of New York.[9] *Id.* at 7. He contends the Children were brought to Pennsylvania by Mother for Mother's Day weekend. *Id.* at 8. As such, Father asserts a lack of jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act (the "UCCJEA"), 23 Pa.C.S.A. § 5401 *et seq*.[10]

In finding Father was not entitled to relief on his first issue, the orphans' court reasoned:

> Father's first issue on appeal purports to challenge the [juvenile] [c]ourt's jurisdiction[5] to make an initial finding of dependency and to place the Children in the custody of BCCYS. Specifically, Father argues that the Children should never have been declared dependent because they were, at all relevant times, residents of the State of Michigan, rather than Pennsylvania. Father alleges that the Children were only in Pennsylvania in the first instance because Mother brought them here to visit their

---

[9] Notably, throughout the termination hearing, Father maintained that he and the Children were residents of Michigan. N.T., 8/28/20, at 3-6, 13-14; N.T., 8/24/20, at 23-27.

[10] Father cites 23 Pa.C.S.A. § 5424 with regard to temporary emergency jurisdiction, which provides, in part:
> **(a) General rule.--**A court of this Commonwealth has temporary emergency jurisdiction if the child is present in this Commonwealth and the child has been abandoned or it is necessary in an emergency to protect the child because the child or a sibling or parent of the child is subjected to or threatened with mistreatment or abuse.

23 Pa.C.S.A. § 5424(a).

- 6 -

maternal grandmother. Father stated he came to Reading to retrieve the Children - nothing more.

5 The court can only assume Father means to challenge venue, as the Act clearly grants the court subject matter jurisdiction in dependency matters.

As an initial matter, Father never challenged the [juvenile] [c]ourt's jurisdiction in the dependency proceedings.[11] Father attended the adjudicatory hearing on May 22, 2019, where he was represented by counsel. Father failed to raise the issue of jurisdiction at that time, and he subsequently failed to preserve the issue before the Honorable Superior Court within the 30-day appellate window. Further, the only evidence presented as to the Children's permanent residence not being in Pennsylvania came from Father in his testimony, which the [c]ourt did not find to be credible. As discussed more in depth elsewhere in this Opinion, Father purported to be residing in multiple states at multiple addresses at one time or another. The [c]ourt has no faith that Father was honest regarding his residency at any point other than when he said on the day of the Termination Hearing he was staying at a homeless shelter in Reading.

In fact, Father raised this venue issue for the first time on August 3, 2020 - nearly three months after BCCYS filed its Petitions to terminate his parental rights - before a different judge in a different division of the [t]rial [c]ourt.[12] By the time Father raised this issue, the [C]hildren had been in the custody of BCCYS for more than 15 months, living with resource parents upon whom they have become dependent and bonded. Because Father failed to raise this issue promptly before the initial judge assigned to his case, or otherwise properly preserve this issue for appeal, his argument with regard to venue of the [juvenile] [c]ourt to issue an initial order regarding dependency should be deemed waived.

In any event, the Pennsylvania Juvenile Act specifically provides, among other things, that a child protective agency may

___

[11] We recognize the dependency record was neither incorporated at the termination hearing nor included with the certified record. Certain aspects were, however, admitted as exhibits at the termination hearing and included with the certified record.

[12] On August 3, 2020, Father filed a Motion to Dismiss for Lack of Jurisdiction. This motion was denied by separate order entered on September 2, 2020. *See* Order, 9/2/20.

commence dependency proceedings "in the county the child is present when it is commenced." *See* 42 Pa.C.S.A. § 6321(b)(3). As such, it is clear that the [c]ourt is statutorily granted subject matter jurisdiction in this case.

When BCCYS took the Children into protective custody, Father, Mother, and the Children were staying at the Rodeway Inn, which is located within Berks County, Pennsylvania. Parents had, in fact, been there for many months before the incident of May 11, 2019. In any event, whether or not Mother and Father were at the Rodeway Inn for a night, a week, or a month, they were staying in Pennsylvania with the Children, together, when police discovered the Children without proper parental supervision and care. As a result, BCCYS filed emergency petitions and subsequent dependency petitions, which the [juvenile] [c]ourt granted after a full hearing which Father attended.

As discussed above, the statute is clear that a dependency action may be commenced in the county where the child is **present**, rather than where the child **resides**. The statute does address that the [juvenile] [c]ourt may transfer proceedings to the county a child resides in "on motion of a party or on its own motion made after the adjudicatory hearing or at any time prior to final disposition." 42 [Pa.C.S.A.] § 6321(c)(1)

Father did not ask the dependency court to transfer the proceedings to the alleged county of residence (which would appear to be Wayne County, Michigan, if they were residents of Detroit). BCCYS did, however, contact Michigan through the Interstate Compact protocols to see if Michigan would assume the case with either placement with Father, or paternal grandmother acting as caretaker for the Children, because Father purported to live there. Authorities in Michigan rejected both requests because neither Father nor paternal grandmother was considered an appropriate caregiver.

Under 42 [Pa.C.S.A.] § 6321(c)(1), the [juvenile] [c]ourt may transfer the matter for further proceedings where the Children reside. Assuming for the sake of argument that the Children did previously reside in Michigan (again, no competent evidence exists to demonstrate that they did at any time), the appropriate agency there declined involvement, making transferring proceedings a moot argument as the other suggested venue refused participation. To dismiss the case, then, so that the Children may be left to go back to the unrectified situation

- 8 -

that created the need for dependency in the first instance[,] would be directly in opposition to the Children's best interests.

Returning focus to the question of jurisdiction, quite simply, a petition was properly filed under the Juvenile Act regarding this matter concerning events that occurred in Berks County, Pennsylvania. The [c]ourt clearly has subject matter jurisdiction under the Juvenile Act. The argument Father purports to make sounds as a challenge to venue, rather than jurisdiction. Father long ago waived that issue by failing to raise it before the dependency court. Further, the Children have remained in placement for more than one year pursuant to the [juvenile] [c]ourt's initial dependency and dispositional orders. Father cannot, despite his efforts, attempt to reinvent the wheel and deprive the [C]hildren of the permanency they deserve.

O.C.O. at 5-8 (emphasis in original) (footnotes omitted) (citation to record omitted) (footnotes added).

We agree with the orphans' court's sound reasoning and conclude Father is not entitled to relief on his first issue.[13]

Next, with his third issue, which we take out of order, Father argues that his initial counsel during the dependency proceedings provided inadequate representation. Father's Brief at 24-25. Father contends prior counsel was inadequate in failing to challenge jurisdiction, as well as failing to argue the statutory language of the CPSL[14] and unlawful search and seizure, in the juvenile court. *Id.*

---

[13] We note that, to the extent the UCCJEA is implicated as Father alleges, Pennsylvania contacted Michigan to see if Michigan wanted to assume jurisdiction, which it did not. *See* 23 Pa.C.S.A. § 5421.

[14] Child Protective Services Law ("CPSL"), 23 Pa.C.S.A § 6301 *et seq.*

As to this issue, the orphans' court stated:

It is well established that parents have a right to counsel during dependency proceedings. Section 6337 of the Juvenile Act specifically addresses the Right to Counsel by stating: "a party is entitled to representation by legal counsel at all stages of any proceedings under this chapter and if he is without financial resources or otherwise unable to employ counsel, to have the [t]rial [c]ourt provide counsel for him. If a party other than a child appears at a hearing without counsel the [t]rial [c]ourt shall ascertain whether he knows of his right thereto and to be provided with counsel by the [t]rial [c]ourt if applicable." 42 [Pa.C.S.A.] § 6337.

In the immediate case, Father was represented by counsel of his choice at the Termination Hearing. Counsel had been representing Father since at least January 2020. Prior to that, Father had the benefit of court-appointed counsel in the dependency proceedings, Mary Favinger, Esq. ("Attorney Favinger"). Attorney Favinger is known by the [orphans'] [c]ourt to be a competent and qualified member of the bar with significant experience in dependency proceedings. Ms. Favinger attended various court proceedings with Father and filed petitions in November 2019 to have the Children returned to him.

Father raises the issue of having "adequate representation" for "various hearings and in other interrelations" from May 12, 2019, until January of 2020. Father, however, fails to identify a number of things in advancing this argument including, without limitation:

a. which specific hearings between those dates did he not have adequate representation?

b. What are "other interrelations?"

c. How was the representation inadequate?

Father's testimony during the Termination Hearing is notably devoid of discussing difficulties or issues with his prior attorney. The one place where Father is questioned regarding his prior representation is to inquire about a petition filed on his behalf seeking to have the Children returned to his care. Absent some sort of specificity as to issues with previous counsel (either in the Concise Statement or in testimony given at the Termination Hearing), the [orphans'] [c]ourt cannot adequately address the issue. Issues addressed in the Concise Statement must "properly

- 10 -

specify the error to be addressed on appeal." [***Commonwealth v. Hansley***, 24 A.3d 410, 415 (Pa.Super. 2011)]. "When a court has to guess what issues an appellant is appealing, that is not enough for a meaningful review." [***Commonwealth v. Dowling***, 778 A.2d 683, 686 (Pa.Super. 2001)].

Here, in this matter, Father fails to address "inadequate representation" or identify when this happened (either in relation to specific hearing dates or whatever "other interrelations" might be). What the [orphans'] [c]ourt can determine is that Father has been represented by counsel, either his current attorney or his previously court-appointed attorney, throughout the dependency process and at the Termination Hearing.

O.C.O. at 8-10 (footnote omitted).

Pennsylvania Rule of Appellate Procedure 1925(a)(2)(i) requires an appellant in a Children's Fast Track matter to submit a Concise Statement of Errors Complained of on Appeal along with the Notice of Appeal. ***See*** Pa.R.A.P. 1925(a)(2)(i) ("The concise statement of errors complained of on appeal shall be filed and served with the notice of appeal required by Rule 905[.]")). Where a Rule 1925(b) Statement does not sufficiently identify an issue on appeal, this Court has found the issue to be waived.

Specifically:

When a court has to guess what issues an appellant is appealing, that is not enough for meaningful review. When an appellant fails adequately to identify in a concise manner the issues sought to be pursued on appeal, the trial court is impeded in its preparation of a legal analysis which is pertinent to those issues.

In other words, a Concise Statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no Concise Statement at all. While [***Commonwealth v. Lord***, 553 Pa. 415, 719 A.2d 306 (1998)] and its progeny have generally involved situations where an appellant completely fails to mention an issue in his Concise

- 11 -

> Statement,. . . we conclude that **Lord** should also apply to Concise Statements which are so vague as to prevent the court from identifying the issue to be raised on appeal.

**Lineberger v. Wyeth**, 894 A.2d 141, 148 (Pa.Super. 2006) (quotation omitted).

Here, in his Rule 1925(b) statement, Father averred:

> Berks County CYS provided counsel to the Father for the hearing. Was the Father adequately represented by the counsel appointed by CYS at the various hearings and in other interrelations from May 2, 2019, until January of 2020?

Father's Rule 1925(b) statement, filed 9/30/20.

We agree with the orphans' court that the issue set forth in Father's Rule 1925(b) statement is too vague to permit meaningful review. Thus, we agree Father waived the issue for appeal.[15]

Lastly, we review Father's challenge to the orphans' court's termination of his parental rights. While framed as a challenge to the termination of parental rights, at its core Father attacks the underlying dependency. Father again essentially argues that there was no jurisdiction under the UCCJEA and there was no evidence of child abuse as defined by the CPSL. Father's Brief at 19-24. He summarizes:

---

[15] We further recognize that Father raises this issue for the first time on appeal. Thus, we would also find this issue waived on this basis. **See** Pa.R.A.P. 302(a) (providing for waiver of issues not first raised in lower court). Moreover, to the extent this claim is a challenge to the orders of adjudication and disposition, we would find that such a challenge, similar to that of jurisdiction, is untimely. **See** Pa.R.A.P. 903(a).

- 12 -

Clearly, all that can be concluded in this case is that the decision of the Berks County Judge to take the [C]hildren from their parents and to ultimately terminate their parental rights was unlawful because [BCCYS] did not meet the criteria as set out in 23 [Pa.C.S.A.] § 5424, 23 [Pa.C.S.A.] § 6303, nor the decision of our Supreme Court in [**In Re: D.R.**, _ Pa. _, 232 A.3d 547 (2020)], and as a result, the decision must be reversed and the children returned to their natural parents for further proceeding regarding custody.

**Id.** at 22-23.

As indicated above, any challenge to the orders of adjudication and disposition is procedurally flawed. Moreover, Father fails to address the appropriate law and standards set forth for termination of parental rights. Nonetheless, we analyze the termination of parental rights and sufficiency of the evidence.

In matters involving involuntary termination of parental rights, our standard of review is as follows:

The standard of review in termination of parental rights cases requires appellate courts "to accept the findings of fact and credibility determinations of the trial court if they are supported by the record." **In re Adoption of S.P.**, [616 Pa. 309, 325, 47 A.3d 817, 826 (2012)]. "If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion." **Id.** "[A] decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." **Id.** The trial court's decision, however, should not be reversed merely because the record would support a different result. **Id.** at 827. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings. **See In re R.J.T.**, [608 Pa. 9, 26-27, 9 A.3d 1179, 1190 (2010)].

- 13 -

*In re T.S.M.*, 620 Pa. 602, 628, 71 A.3d 251, 267 (2013). "The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re M.G. & J.G.*, 855 A.2d 68, 73-74 (Pa.Super. 2004) (citation omitted). "[I]f competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result." *In re Adoption of T.B.B.,* 835 A.2d 387, 394 (Pa.Super. 2003) (citation omitted).

The termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938, and requires a bifurcated analysis of the grounds for termination followed by the needs and welfare of the child.

> Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007) (citations omitted). We have defined clear and convincing evidence as that which is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re*

*C.S.*, 761 A.2d 1197, 1201 (Pa.Super. 2000) (*en banc*) (quoting *Matter of Adoption of Charles E.D.M., II*, 550 Pa. 595, 601, 708 A.2d 88, 91 (1998)).

In the case *sub judice*, the trial court terminated Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b). We have long held that, in order to affirm a termination of parental rights, we need only agree with the trial court as to any one subsection of Section 2511(a), as well as Section 2511(b). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*). Here, we analyze the court's termination decree pursuant to Section 2511(a)(2) and (b), which provide as follows:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> . . .
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> . . .
>
> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2), and (b).

With regard to termination of parental rights pursuant to Section 2511(a)(2), we have indicated:

> In order to terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa.Super. 2003) (citation omitted). "The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." *In re Adoption of C.D.R.*, 111 A.3d 1212, 1216 (Pa.Super. 2015) (quoting *In re A.L.D.*, 797 A.2d 326, 337 (Pa.Super. 2002)). "Parents are required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. . . . [A] parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous." *In re A.L.D.*, 797 A.2d at 340 (internal quotation marks and citations omitted).

Further, as to whether termination was proper under Section 2511(b). As to Section 2511(b), our Supreme Court has stated as follows:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental,

- 16 -

physical and emotional needs and welfare of the child." 23 Pa.C.S.[A.] § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa.Super. 2012). In *In re E.M. [a/k/a E.W.C. & L.M. a/k/a L.C., Jr.]*, [533 Pa. 115, 123, 620 A.2d 481, 485 (1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. *In re K.M.*, 53 A.3d at 791. However, as discussed below, evaluation of a child's bonds is not always an easy task.

*In re T.S.M.*, 620 Pa. at 628-29, 71 A.3d at 267. "In cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists. The extent of any bond analysis, therefore, necessarily depends on the circumstances of the particular case." *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa.Super. 2008) (citation omitted).

When evaluating a parental bond, "[T]he court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, Section 2511(b) does not require a formal bonding evaluation." *In re Z.P.*, 994 A.2d 1108, 1121 (Pa.Super. 2010) (internal citations omitted).

Moreover,

While a parent's emotional bond with his or her child is a major aspect of the Section 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.

[I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love,

> comfort, security, and stability the child might have with the foster parent. . . .

*In re Adoption of C.D.R.*, 111 A.3d at 1219 (quoting *In re N.A.M.*, 33 A.3d 95, 103 (Pa.Super. 2011)) (quotation marks and citations omitted).

Instantly, in terminating Father's parental rights, the orphans' court reasoned:

> The [orphans'] [c]ourt can appreciate that Father cares for the Children. That said, given numerous opportunities, Father has not shown he can comply with and follow through with [c]ourt-ordered obligations. Father began but failed to complete mental health counseling. Father initially participated in some urinalysis but stopped, including directly refusing on days when ordered by the [t]rial [c]ourt. Father initially regularly participated with visitations but stopped seeing either [c]hild after visitations were reduced to when therapeutically recommended for one of them. Father failed to keep in regular contact with BCCYS and when he would communicate it was often unreasonable and certainly unproductive.
>
> Based upon Ms. Sanders['] testimony, the Children are bonded with the foster parents. Terminating Father's parental rights will not detrimentally affect the Children. In fact, the foster parents are resources who can continue to meet the Children's developmental, physical, and emotional needs. It is, therefore, in the Children's best interest to continue in the care of their foster parents.
>
> Father was unable or unwilling to comply with [c]ourt-ordered services and to make the changes necessary to provide for a safe, healthy, and permanent living environment for the Children. In fact, as recently as the Termination Hearing, Father was residing in a residence for homeless men.
>
> After much reflection on the matter, and after careful consideration, the [orphans'] [c]ourt terminated Father's parental rights to offer the Children the permanency they need. The Children deserve stability, permanency, and an opportunity to grow up in an environment free of the disruption and turmoil surrounding the dependency process.

Here, Father's "right to the custody and rearing of [C]hildren is converted, upon the failure to fulfill his parental duties, to the [C]hildren's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy safe environment." [*In re: B.L.W.*], 843 A.2d at 388. As the Superior Court has observed, "it is time to give [the children] a chance to have [their] fundamental needs met without the constant insecurity that comes with knowing that someday, perhaps in the unreasonably distant future, [they] might again be wrenched away from [their] committed and capable caregivers." [*Id.*] (quoting [*In re N.C.*, 763 A.2d 913, 919 (Pa.Super. 2000])).

For the foregoing reasons, the [orphans'] [c]ourt found that BCCYS carried its burden of establishing by clear and convincing evidence that Father's parental rights should be terminated, and that, in fact, it is in the best interest of the children that this occur. As such, the [t]rial [c]ourt entered its Decree terminating the parental rights of Father to the [C]hildren.

O.C.O. at 15-17 (footnotes omitted) (some brackets in original).

A review of the record supports the orphans' court's finding of grounds for termination under Section 2511(a)(2). The record reveals that Father failed to complete his objectives aimed at reunification with the Children. N.T., 8/28/20, at 9-11, 30, 33-34; N.T., 8/24/20, at 12-14, 16-18, 21, 30-34. Carla Sanders, BCCYS Adoption Supervisor, testified:

I mean, I think the issue is that the kids were brought into the care -- I have drug and alcohol, mental health. At the time there was -- at the time of the dependency hearing, the court found a list of services that they ordered [M]other and [F]ather to comply with, and those services have not been completed at this time. . . .[16] The only services [Father] successfully completed in Michigan

---

[16] As to the specific services, Ms. Sanders testified:
Q[.] What services were [M]other and [F]ather ordered to cooperate with?

- 19 -

was the domestic violence treatment and anger management treatment, which he clearly has not addressed the issues because many of the incidents that had occurred were after that service was completed.

N.T., 8/28/20, at 9-10. While acknowledging Father engaged in services, Ms. Sanders explained, "I never said he didn't participate. He did participate in services. He has not completed any services successfully." *Id.* at 11.

Hence, the record substantiates the conclusion that Father's repeated and continued incapacity, abuse, neglect, or refusal has caused the Children to be without essential parental control or subsistence necessary for their physical and mental well-being. *See In re Adoption of M.E.P.*, 825 A.2d at 1272. Moreover, Father cannot or will not remedy this situation. *See id*. As we discern no abuse of discretion or error of law, we do not disturb the orphans' court's findings.

As to Section 2511(b), upon review, we likewise discern no abuse of discretion. The record supports the orphans' court's finding that the Children's developmental, physical and emotional needs and welfare favor termination

---

A[.] Mother was ordered to cooperate with a mental health evaluation and any recommendation, parenting education, drug and alcohol evaluation and any recommendation, random urinalysis, casework services and any recommendations, and establishing and maintaining stable and appropriate housing and income, notifying BCCYS of any residence or income and signing releases as requested. Father was court ordered to participate in the same services.

N.T., 8/24/20, at 9. She emphasized that BCCYS workers, including herself, had conversations with Father as to what services were required for reunification. N.T., 8/28/20, at 33-34.

of Father's parental rights pursuant to Section 2511(b). **_See T.S.M._**, 620 Pa. at 628-29, 71 A.3d at 267. Ms. Sanders observed that the Children are doing well in their foster home with their needs met. N.T., 8/24/20, at 35; N.T., 8/24/20, at 18-19. Similarly, Ms. Sanders opined that there would be no resulting harm to the Children through termination of parental rights. N.T., 8/28/20, at 32-33. She testified:

> Q[.] And do you see any detriment to the [C]hildren if parental rights are terminated in this case?
>
> A[.] I do not. Neither of the children are seeing their father, either of the parents in over six months, and at this point, they are living in the foster home. They have made significant progress. The only reports that we have of the [C]hildren talking about their parents is [Y.K.L.], and those conversations that she has are in the negative form towards dad. When she's talking about daddy, it's daddy hit you, daddy yelled at you, things of that nature.

**_Id._** As a result, Ms. Sanders further opined it was in the Children's best interests to terminate parental rights. N.T., 8/24/20, at 21. She explained:

> Q[.] Why is it the [A]gency feels it's in the best interest of the [C]hildren for the parental rights to be terminated?
>
> A[.] Neither parent had completed any of the court-ordered services they were court ordered to do. At this point, the [C]hildren have not seen their parents since January of 2020. They have formed a positive bond with their foster parents and at this point these kids needs permanency and to be able to move on with their lives.

**_Id._**

While Father may profess to love the Children, a parent's own feelings of love and affection for a child, alone, will not preclude termination of parental

rights. ***In re Z.P.***, 994 A.2d at 1121. At the time of the conclusion of the hearings, the Children had been in placement for over a year, and are entitled to permanency and stability. As we stated, a child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting." ***Id***. at 1125. Rather, "a parent's basic constitutional right to the custody and rearing of his child is converted, upon the failure to fulfill his or her parental duties, to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe environment." ***In re B., N.M.***, 856 A.2d 847, 856 (Pa.Super. 2004) (citation omitted).

Accordingly, based upon our review of the record, we find no abuse of discretion and conclude that the orphans' court appropriately terminated Father's parental rights under 23 Pa.C.S.A. § 2511(a)(2) and (b).

Decrees affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/5/2021

- 22 -